UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| SYLVIA ANN MANOR, | No. ED CV 08-977-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I.

**PROCEEDINGS**

Plaintiff filed this action on July 31, 2008, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 14, 2008, and October 31, 2008. The parties filed a Joint Stipulation on April 2, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 3, 1959. [Administrative Record ("AR") at 106, 415.] She has a high school education [AR at 104, 147], and no past relevant work experience. [AR at 138-39, 442.]

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments on January 24, 2006, alleging that she has been unable to work since September 9, 1986, due to, among other things, paranoid schizophrenia. [AR at 99-108.] After plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 56, 383, 385-93.] A hearing was held on January 9, 2007, at which plaintiff appeared with counsel and testified on her own behalf. [AR at 410-30.] A supplemental hearing was held on March 20, 2007, at which plaintiff appeared with counsel and again testified on her own behalf. A medical expert and a vocational expert also testified. [AR at 431-80.] On May 14, 2007, the ALJ issued an unfavorable decision. [AR at 16-22.] When the Appeals Council denied plaintiff's request for review of the hearing decision on May 30, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9, 14.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

2

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.  THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1 sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, at step one, the ALJ found that plaintiff did not engage in any substantial gainful activity since 1986, the alleged onset date of disability.[1] [AR at 20.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: "a psychotic disorder induced by prolonged drug abuse, a personality disorder not otherwise specified and polysubstance abuse particularly methamphetamine in reported remission." [AR at 21.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 22.] The ALJ further found that plaintiff retained a physical residual functional capacity ("RFC")[2] to perform work without any exertional limitations. [AR at 21-22.] In addressing plaintiff's mental RFC, the ALJ referenced the testimony of Dr. Joseph Malancharuvil, the medical expert who testified at the hearing, and a Psychiatric Review Technique Form ("PRTF") completed by Dr. G.M. Rivera-Miya, a non-examining state agency physician. [AR at 21, 22.] At step four, the ALJ concluded that plaintiff had no past relevant work experience. [AR at 20.] At step five, the ALJ concluded that plaintiff could perform jobs existing in significant numbers in the regional and

---

[1] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through March 31, 1990. [AR at 20.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

4

national economies. [Id.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 20, 22.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ improperly: (1) considered the state agency physician's opinion; (2) considered the California Department of Corrections ("CDC") mental status examination of January 18, 2006; (3) determined plaintiff's residual functional capacity; (4) considered the lay witness testimony; (5) considered the side effects of plaintiff's medication; and (6) solicited testimony from the vocational expert. [See Joint Stipulation ("JS") at 2.] As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.   THE ALJ'S CONSIDERATION OF THE MEDICAL EVIDENCE**

Plaintiff contends that the ALJ improperly considered the medical evidence and plaintiff's parole records, including the opinion of Dr. Rivera-Miya and plaintiff's mental status examination conducted by the CDC on January 18, 2006. [JS at 3-4, 9-10.]

The record indicates that plaintiff has a long history of mental health and substance abuse problems. [AR at 375-76.] After graduating from high school, plaintiff enlisted in the navy; however, she was discharged due to alcohol abuse. [AR at 375, 438-39.] The record also indicates that plaintiff has suffered from schizophrenia for approximately 20 years. [AR at 354, 375-76.] Plaintiff began abusing methamphetamine when she was 33 years old, which exacerbated her psychiatric symptoms, and caused her to become suicidal, anxious, confused and hospitalized on multiple occasions. [AR at 332, 354, 376.] Plaintiff received Disability Insurance Benefits for approximately 20 years due to her psychiatric disorders; however, her benefits were suspended by the Administration when she was incarcerated from July 2004 to January 2006.[3]

---

[3] With few exceptions, a claimant's Disability Insurance Benefits must be suspended while he or she is "confined in a jail, prison, or other penal institution or correctional facility for conviction of a felony." 20 C.F.R. § 404.468; 42 U.S.C. § 402(x).

[AR at 19, 63, 374-76, 416.] While incarcerated, plaintiff's substance abuse went into remission, and she testified that she has remained sober since her release in January 2006. [AR at 376, 443-46.] However, both while incarcerated and on parole, she continued to report psychiatric symptoms including, among others, auditory and visual hallucinations, paranoia, anxiety, depression, difficulty concentrating, and difficulty tracking and planning her time. [AR at 225, 228, 234, 296, 299, 308, 316, 317, 323, 324, 332, 339, 349, 352, 366-68, 370-76.]

In the decision, the ALJ noted that plaintiff "asserts schizophrenia for which she has been treated for approximately 20 years," was diagnosed with schizophrenia-undifferentiated type, and has been prescribed various psychiatric medications. [AR at 21.] In finding that plaintiff's mental impairments are not disabling, the ALJ referenced the testimony of Dr. Malancharuvil and the PRTF completed by Dr. Rivera-Miya. [Id.] Specifically, the ALJ asserted that the PRTF indicated that plaintiff has mild restrictions in daily living and in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no history of episodes of decompensation of any extended duration. [AR at 21; see 153-62.] The ALJ noted that Dr. Malancharuvil concluded that plaintiff has the same limitations provided in the PRTF, and that Dr. Malancharuvil also opined that plaintiff cannot do work involving emotionally charged interpersonal interaction with the general public, hazardous machinery, or fast-paced assembly lines, but that she can do work involving moderately complex tasks with up to four- or five-step instructions so long as it is in a habituated setting and does not require safety operations. [AR at 21; see 448-49.] The ALJ also concluded that plaintiff's prison treatment records indicate that her impairments improved while she was incarcerated. [AR at 20.] Specifically, the ALJ cited three of plaintiff's prison treatment records that stated she was "stable," had "improved with meds," her psychiatric symptoms were "resolved," her drug dependence was "in remission," and she had denied having mental health concerns and her psychologist found that none were present. [AR at 20, citing AR at 145 (treatment record dated January 5, 2006), 320 (treatment record dated June 8, 2005), 323 (treatment record dated May 11, 2005).] The ALJ also commented that shortly after plaintiff

became incarcerated, she had a Global Assessment of Functioning ("GAF") score of 65,[4] indicating that she was "generally functioning pretty well." [AR at 20, citing AR at 358-61 (treatment record dated August 6, 2004).] Based on his review of plaintiff's prison treatment records, the ALJ concluded that only after plaintiff filed her application for disability benefits "did her self-reported psychiatric complaints mysteriously surface." [AR at 20.]

In relying on three of plaintiff's prison treatment records to support his conclusion that plaintiff's impairments "improved" during her 18-month period of incarceration [AR at 20, 145, 320, 323], the ALJ ignored contradictory evidence indicating that plaintiff in fact continued to experience significant psychiatric symptoms while incarcerated. For example, plaintiff's prison treatment records note that she reportedly experienced visual and auditory hallucinations, depression, anxiety, and paranoia while she was incarcerated. [See, e.g., AR at 225 (June 22, 2005: nervousness, fear, desire to hide in blankets), 228 (May 26, 2005: nervousness, uneasy feeling), 234 (April 26, 2005: paranoia, auditory hallucinations), 296 (December 28, 2005: depression), 299 (December 15, 2005: auditory hallucinations; doctor noted her "odd presentation" and that she was "likely psychotic"), 308 (September 21, 2005: depression and nervousness), 316 (June 26, 2005: nervousness, anxiety, moodiness), 317 (June 23, 2005: anxiety, paranoia), 324 (May 3, 2005: panic attacks, anxiety), 339 (January 21, 2005: auditory hallucinations).] Even one of the three prison treatment records cited by the ALJ as showing that plaintiff's condition had improved, dated May 11, 2005, reflects plaintiff's reported anxiety attacks lasting one week as well as her nervousness around people, "racing thoughts," and inability to think clearly. [AR at 323.] It was improper for the ALJ to selectively reference three of plaintiff's incarceration treatment records to support his conclusion that plaintiff's psychiatric symptoms improved while she was incarcerated,

---

[4] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 32 (4th Ed. 2000). A GAF score from 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV, at 34.

while ignoring other treatment records contradicting that very conclusion. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion). See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); see also Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ cannot selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).[5]

Thus, when all of plaintiff's treatment records are considered, it is apparent that her self-reported psychiatric complaints did not "mysteriously surface" only after she filed her applications for disability benefits, as the ALJ concluded. [AR at 20.] Rather, the symptoms that plaintiff reported experiencing after she submitted her applications for benefits on January 24, 2006 -- i.e., auditory hallucinations, difficulty concentrating, anxiety, paranoia, nervousness, and depression -- are similar to the psychiatric symptoms that she reported prior to that time, including while she was in prison. [Compare AR at 225, 228, 234, 296, 299, 308, 316, 317, 323, 324, 332, 339, 349, 352 (symptoms while in prison) with AR at 364-68, 370-76 (symptoms after release).][6] Remand is therefore warranted so the ALJ can reconsider the medical evidence.[7]

---

[5] Similarly, in relying on the August 6, 2004, CDC record asserting that plaintiff had a GAF score of 65, the ALJ improperly ignored the CDC parole mental status examination cited by plaintiff, which indicates that she had a GAF score of 45 on January 18, 2006 (five days after her release from prison on January 13, 2006). [AR at 374-76, 418.] Gallant, 753 F.2d at 1456. A GAF score of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." See DSM-IV, at 34.

[6] The ALJ also erred in summarizing the findings reflected in the PRTF. [AR at 21.] Plaintiff correctly asserts that contrary to the ALJ's decision, Dr. Rivera-Miya in fact found that plaintiff had incidents of decompensation of extended duration, instead of none. [AR at 21, 161.] Dr. Rivera-Miya also opined that plaintiff was mildly (not moderately) limited in her ability to maintain concentration, persistence, or pace. [Id.]

[7] Furthermore, to the extent the ALJ, Dr. Malancharuvil, and Dr. Rivera-Miya reached conclusions concerning plaintiff's disability status based solely on her prison and parole treatment records (the only medical evidence presented in the administrative record), further development

### B. THE THIRD PARTY TESTIMONY

Plaintiff contends that the ALJ improperly considered the Function Report -- Adult -- Third Party completed by Raymond Borunda, plaintiff's friend, on July 7, 2006. [JS at 15-16.] Specifically, Mr. Borunda reported that plaintiff experiences auditory hallucinations that impact her social activities, has difficulty maintaining concentration and participating in conversations, cannot pay her own bills, and has difficulty sleeping because she laughs all night long. [AR at 127-34.]

The ALJ erred in failing to consider Mr. Borunda's third party statement concerning plaintiff's symptoms and limitations. Judges may, "in addition to evidence from the acceptable medical sources . . . , also use evidence from other sources to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). Such other sources include spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy. See 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Lay witness testimony by family members and friends who have the opportunity to observe plaintiff on a daily basis "constitutes qualified evidence" that the ALJ must consider. Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987); see Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993) ("An eyewitness can often tell whether someone is suffering or merely malingering. While this is particularly true of witnesses who view the claimant on a daily basis, the testimony of those who see the claimant less often still carries some weight."). To reject lay testimony, an ALJ must give reasons "germane to each witness" for doing so. Dodrill, 12 F.3d at 919. An ALJ may not "discredit [] lay testimony" concerning a plaintiff's limitations just because he finds that it is "not

---

of the medical evidence is warranted. There is no dispute that plaintiff received Disability Insurance Benefits due to her mental impairments for nearly 20 years prior to her incarceration. [AR at 19, 106-07, 385.] When plaintiff was granted benefits in 1988, the Administration found that the medical evidence showed that her mental impairments made her "unable to maintain sustained gainful work." [AR at 385.] If there are ambiguities or inadequacies in the record concerning medical treatment or diagnoses that may affect the determination of disability, the ALJ has a duty to further develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty is "heightened where[, as in this case,] the claimant may be mentally ill and thus unable to protect her own interests." Id. Here, plaintiff's psychiatric treatment records from before her incarceration -- including those apparently available to the Administration when it granted her benefits in 1988 -- might assist in explaining her mental impairments, and in turn, impact the medical expert's and non-examining physician's opinions concerning plaintiff's limitations.

1  supported by medical evidence in the record." Bruce v. Astrue, 557 F. 3d 1113, 1116 (9th Cir.
2  2009) (quoting Smolen, 80 F.3d at 1289). Here, the ALJ erred in failing to even *mention* Mr.
3  Borunda's third-party statement, let alone provide reasons germane to him for disregarding it. On
4  remand, the ALJ must explicitly consider Mr. Borunda's statement concerning plaintiff's limitations.

### C. THE RFC DETERMINATION AND THE VOCATIONAL EXPERT'S TESTIMONY

Plaintiff asserts that the ALJ erred in determining plaintiff's RFC and in soliciting testimony from the vocational expert. [JS at 12-14, 21-22.] Specifically, plaintiff asserts that the ALJ provided a vague and incomplete RFC in the decision that did not encompass all of plaintiff's limitations and restrictions, and that the hypothetical question posed to the vocational expert improperly excluded some of plaintiff's limitations. [Id.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). Since, as explained herein, the ALJ did not properly consider the relevant evidence, his RFC determination, which was based on his consideration of the evidence, was also erroneous. As such, on remand, the ALJ must re-assess plaintiff's RFC once the evidence has been reconsidered.

Similarly, remand is warranted to obtain new vocational expert testimony. "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). Because the ALJ based his questions to the vocational expert on his evidentiary determinations, remand is warranted to obtain new testimony from a vocational expert once the evidence discussed above has been further considered.

/
/
/

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to: 1) reconsider the medical evidence; 2) consider Mr. Borunda's third-party testimony; 3) determine plaintiff's RFC in light of the re-examined evidence; and 4) obtain new testimony from a vocational expert. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.[8]

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 6, 2010

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[8] In light of the Court's remand order, the Court does not address plaintiff's remaining contentions of error.